# UNITED STATES *v.* FLETCHER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE EASTERN DISTRICT OF ARKANSAS.

No. 783. Submitted January 3, 1893. — Decided March 6, 1893.

When, for convenience in making up accounts, an outgoing marshal re-linquishes to his successor his right to expenses incurred in endeavoring to arrest persons for offences against the United States, the incoming marshal may charge these fees in his accounts, and they should be allowed.

A marshal of a district into which an offender, who has committed a crime in another district, comes, may deputize the marshal of the district in which the offence was committed, or his deputy, to execute the warrant of removal, and relinquish to him the fees therefor.

The treasury officers have a right to require of a marshal items of expenses incurred in endeavoring to arrest persons charged with the commission of crime.

When claims against the United States are presented to the proper department for allowance, and the department suspends action until proper vouchers are furnished, or other reasonable requirements are complied with, the courts should not assume jurisdiction until final action is taken.

A marshal may charge mileage upon as many writs as he may have in his hands, where the writs are against different persons.

THE case is stated in the opinion.

*Mr. Solicitor General* and *Mr. Felix Brannigan* for appellant.

*Mr. William W. Dudley, Mr. Louis T. Michener,* and *Mr. Richard R. McMahon* for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

This was an action to recover certain fees alleged to be due the plaintiff as marshal of the United States for the Eastern District of Arkansas. The court below directed judgment to be entered in his favor for $3069.16, 45 Fed. Rep. 213, and the United States appealed.

A part only of the items in controversy are included in the assignments of error. Those to which objection was made in this court are as follows:

1. Expenses incurred by a deputy of the plaintiff's predecessor while endeavoring to arrest persons for offences against the United States, $16.

This item was disallowed by the comptroller upon the ground that the same was due to the former marshal, and that the plaintiff was not authorized to pay expenses incurred by his predecessor. As a general rule, this is entirely true, but it appears in this case that the writs were issued before the plaintiff qualified for office, but were not returned until after he had qualified, and that, by an arrangement between the outgoing and incoming marshal, the latter was to have the fees earned upon all writs in the hands of the deputies of the former at the date the office changed hands. It further appeared that the outgoing marshal made no claim to these fees. Properly speaking, the outgoing marshal was entitled to these fees under Rev. Stat. § 790, which allows him to execute all such precepts as may be in his hands at the time of his removal or the expiration of his term. But if, for the convenience of making up accounts, the outgoing marshal is content to relinquish his right to these fees, we see nothing but a technical objection in the way of the incoming marshal charging them up in his accounts. Did the outgoing marshal claim these fees as a debt justly due him, a different question would arise, but in view of his relinquishment of them, we think they should have been allowed to his successor, the plaintiff.

2. An item of $1804.73, for travel and other fees in pursuing into other judicial districts, and there arresting persons charged with crime in the Eastern District of Arkansas, and bringing the persons so arrested into the latter district, was disallowed by the comptroller upon the ground that the marshal had no authority to arrest a prisoner in any district but his own.

It appears, however, that where arrests were so made, the marshals of the foreign districts deputized the plaintiff or his deputy to execute the orders of removal to the Eastern District of Arkansas, and relinquished in favor of the plaintiff all

claim against the United States for the mileage or fees so accrued. It appears to have been the custom for the marshals of this district to pursue fugitives from justice into other districts, to procure a deputation from the marshals of such other districts, and in such cases it was the practice of the Treasury Department up to 1885 to allow the mileage and other fees to the pursuing marshal, when the marshals of the foreign districts relinquished their claims for the same in his favor. When a person is arrested in one district for an offence alleged to have been committed in another, Rev. Stat. § 1014 requires the judge of the district within which he is arrested to execute a warrant to the marshal for his removal to the district where the trial is to be had. No good reason is perceived why the marshal of that district may not deputize the marshal of the district within which the crime was committed, or his deputy, to execute such warrant of removal, and relinquish to him his legal fees therefor.

Under such circumstances, we think the latter may properly charge these fees in his own account to the government, and that they should be allowed to him.

3. Expenses incurred to the amount of $130.50 in endeavoring to arrest in his own district persons charged with crime therein. The sum did not exceed the rate of $2 per day, the maximum amount allowed by law, and was not disallowed by the accounting officers in the settlement of his accounts, but was merely *suspended* for an itemized statement of the expenses.

Objection was made to this item upon the ground that the account was still in process of settlement in the department, and had not been finally passed upon or disallowed. Rev. Stat. § 829 allows to a marshal "for expenses while employed in endeavoring to arrest, under process, any person charged with or convicted of a crime, the sum actually expended, not to exceed two dollars a day." The finding of the court was that the services had been performed, and that the expenses equalled the amount charged, and sometimes exceeded the $2 a day allowed by law. The Comptroller, however, had a right to require items of these expenses to be furnished. The

smallness of the amount allowable under the statute does not affect the principle, unless at least a showing be made that it is impossible to furnish the particulars.

With regard to the power of the court to allow these items pending the settlement of the marshal's account by the officers of the Treasury Department, Rev. Stat. § 951 provides that "in suits brought *by* the United States against individuals, no claim for a credit shall be admitted, upon trial, except such as appear to have been presented to the accounting officers of the Treasury, for their examination, and to have been by them disallowed, in whole or in part," etc. This was, prior to the establishment of the Court of Claims, the only method provided by law for obtaining a judicial allowance of claims against the government. It is true that it was held by this court, under the Court of Claims act, in *Clyde* v. *United States,* 13 Wall. 38, that a rule of that court, requiring parties to present their claims to an executive department before suing, was unauthorized and void, the court holding that this was a jurisdictional requirement which Congress alone had the power to establish, and, inferentially at least, that no action of the executive department was required before suit could be begun in that court under the act establishing it. This was also the ruling in *United States* v. *Knox,* 128 U. S. 230, 234, which was a suit in the Court of Claims by a commissioner of the Circuit Court for fees. In delivering the opinion of the court, Mr. Justice Miller remarked: "We understand the court to have decided," (in *Clyde* v. *United States,*) "in substance, that the action of the auditing department, either in allowing or rejecting such a claim, was not an essential prerequisite to the jurisdiction of the Court of Claims to hear it." But if such claims are presented to the department for allowance, and the department, in the exercise of its discretion, suspends action upon them until proper vouchers are furnished, or other reasonable requirements are complied with, the courts should not assume jurisdiction until final action is taken. So long as the claim is pending and awaiting final determination in the department, courts should not be called upon to interfere, at least, unless it ignores such claim or fails to pass upon it within a reason-

able time. This was the rule applied by this court with respect to a pending survey of lands in *New Orleans* v. *Paine,* 147 U. S. 261.

4. The last assignment of error relates to a claim of $1565.16, for more than one mileage on the service of two or more writs against different persons for different causes, when the service was made in the course of one trip ; and also for mileage on more than one writ where more than one writ was served at the same time and place upon different persons. Rev. Stat. § 829 allows six cents a mile for travelling in the service of process, with a proviso that, "when more than two writs of any kind required to be served in behalf of the *same* party on the *same* person might be served at the same time, the marshal shall be entitled to compensation for travel on only two of such writs." There is here a clear implication that there is no restriction upon the right of the marshal to charge mileage upon as many writs as he may have in his hands where the writs are against *different* persons.

The proviso in the act of February 22, 1875, § 7, 18 Stat. 334, that no person shall be entitled to an "allowance for mileage or travel not actually and necessarily performed," evidently refers to cases where process is sent by mail to a deputy to be served at a place remote from the office whence the process has issued. The reasons for this allowance, however, are fully stated in *United States* v. *Harmon, ante,* 268, and this item is allowed upon the authority of that case.

This disposes of all the questions raised by the assignments of error, and the judgment of the court below is, therefore,

*Reversed; and the case remanded, with instructions to enter a new judgment in conformity with this opinion.*